IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

ARIE DAVIS, on behalf of A.D.,    *
a minor,
                                  *

     Plaintiff,
                                  *

vs.                                        CASE NO. 3:25-cv-96 (CDL)
                                  *

THE FRANKLIN COUNTY SCHOOL
SYSTEM, *et al.*,                 *

     Defendants.                  *

_____

O R D E R

     A.D. was an eleven-year-old black middle school student who

enrolled in Franklin County Middle School after his family moved

from Miami, Florida, to Franklin County, Georgia.  Franklin County

is predominately white, and its middle school has a predominately

white student population.  Arie Davis, A.D.'s father, alleges that

shortly after A.D. started attending Franklin County Middle

School, the School Principal, David Cawthon, and the School

Resource Officer, Brandon Dove, began discriminating against A.D.

because of his race by disciplining him more harshly than white

students.  Davis alleges that this targeted campaign culminated

when Cawthon and Dove filed a Delinquency Complaint against A.D.

in Juvenile Court on a false charge that was ultimately dismissed

for lack of evidence.  Davis now brings this action on A.D.'s

behalf, asserting claims for constitutional violations under 42

U.S.C. § 1983 and state law torts against Cawthon, the Franklin County School District, Dove, and the Franklin County Sheriff's Office.[1]  Cawthon and the District moved to dismiss the claims against them.[2]  For the following reasons, both those motions (ECF Nos. 17 & 18) are granted in part and denied in part.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims.  *Id.* at 556.  But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

---

[1] The Complaint misspelled Cawthon's name as "Cawthorn" and incorrectly named the District as the "Franklin County School System."
[2] Dove and the Sheriff's Office did not file motions to dismiss.

2

FACTUAL BACKGROUND

Davis alleges the following facts in support of his claims. The Court must accept these allegations as true for purposes of the pending motions.

## I.   A.D.'s Enrollment at Franklin County Middle School

A.D. was an eleven-year-old black middle school student who enrolled in Franklin County Middle School in the fall of 2024 after his family moved from Miami, Florida, to Franklin County, Georgia. Franklin County's racial demographic is approximately 90% white, and only 1-5% of students in its middle school are black.   The Principal of Franklin County Middle School is David Cawthon, a white male, and its School Resource Officer is Brandon Dove, a white male who is a Sheriff's Deputy with the Franklin County Sheriff's Office.   Prior to his enrollment at Franklin County, A.D. was a consistently high performing student and never experienced any disciplinary issues inside or outside of school.

Shortly after he began attending Franklin County Middle School, A.D. was bullied by white students.   Instead of disciplining the students bullying A.D., school personnel, "at the direction of Defendant Cawthorn and Defendant Dove," punished A.D. Compl. ¶ 16, ECF No. 4.   Davis details the following incidents in his Complaint, which took place throughout the fall of 2024:

- ♦ A white male student texted A.D. the "N-Word" and circulated the text to other students. *Id.* After reporting the incident to school personnel, including

3

Cawthon, the name-calling student was not reprimanded or disciplined.

♦ A.D. was touched inappropriately by a white male student in class.  A.D. told his teacher, who did not intervene and instead reprimanded A.D. for calling his parents to report the incident.  Cawthon issued a Consequence against A.D. for this incident.[3]

♦ A.D. was kicked by a white female student.  A.D. kicked back at the student but did not make contact.  Cawthon issued a Consequence against A.D. for this incident.

♦ A student spat in A.D.'s face at the water fountain.  A.D. reported the student to school personnel, including Cawthon and Dove, but the aggressor student was not disciplined.

♦ A white male student called A.D. a "bitch" numerous times in class.  *Id.*  A.D. reported this behavior to his teacher, who took no action against the name-calling student.  Later that day, the same student pushed and punched A.D., who pushed the student back, and a tussle ensued.  After the tussle was broken up, Cawthon blamed A.D. for the incident and "ordered that he be suspended for five days."  *Id.*  The aggressor student was not disciplined.  Davis thereafter contacted Melanie Burton-Brown, the Franklin County School System Superintendent, and demanded that she review video of the incident and talk to other student witnesses.  It was ultimately determined that A.D. was not the aggressor.  After this incident, Burton-Brown prevented Cawthon from having contact with A.D.

In all, Cawthon issued "at least 6 to 7" Consequences against A.D. within a sixty-day period "for incidents that either did not occur or where [A.D.] was the victim."  *Id.* ¶ 17.  While those incidents were taking place, Davis alleges that Cawthon and Dove were "conspiring to have [A.D.] criminally charged."  *Id.*

---

[3] A Consequence is a disciplinary citation issued against misbehaving students which, when accumulated, lead to a suspension.

**II.   Juvenile Delinquency Proceedings Against A.D.**

In September of 2024, Cawthon and Dove "accused [A.D.] of hitting and poking a white female student with drumsticks" and reported the incident to the student's parents. *Id.* ¶ 18.  When the student's mother met with Cawthon about the incident, Cawthon "encouraged her to file criminal charges against [A.D.]."  *Id.* The student's mother declined, informing Cawthon that the student's family had no interest in pressing criminal charges against an eleven-year-old child for "a minor incident."  *Id.* After an investigation by the school, however, there was no evidence that the drumstick incident ever occurred.

A short time later, Dove told the white female student's parents that A.D. struck their daughter with a paper hall pass. Dove encouraged the parents to press charges against A.D., and the parents again declined.  Several days afterward, the student's father met with Dove, who told the father that he reviewed video footage of A.D. bullying his daughter.  Dove told the father that A.D. was "a problem child from Miami" and again encouraged him to press criminal charges against A.D.  *Id.* ¶ 20.  When the father declined to do so, Dove asked the father to write a sworn statement to memorialize A.D.'s alleged bullying of his daughter, which the father agreed to do.  It was later discovered that the video of the alleged bullying incident involving A.D. and the female student did not exist.

On October 22, 2024, Dove and Cawthon "caused a false Delinquency Complaint to be filed against [A.D.]" in Franklin County Juvenile Court. *Id.* ¶ 21. The Delinquency Complaint names Dove as the investigating officer and includes the signature of the white female student's father as the Complainant. Compl. Ex. A, Delinquency Complaint, ECF No. 4-1.[4] The Delinquency Complaint lists one charge of Simple Battery and provides the following allegations in support of that offense:

> On 09-20-24 [Resource Officer] was informed by victim[']s mother that her child was being assaulted at school by the offender [A.D.] on one [sic] multiple occasion[s] she is being struck with drum sticks, poked and scratched by the offender. Her injuries are to her arm and back.

*Id.* at 2. In response to the Delinquency Complaint, Franklin County prosecutor Kevin McFarlin filed a Delinquency Petition against A.D. in Franklin County Juvenile Court. Compl. Ex. B., Delinquency Petition, ECF No. 4-2. The Petition charged A.D. with Simple Battery in violation of O.C.G.A. § 16-5-23(a)(1), a criminal misdemeanor. *Id.* The Petition alleges that A.D. "intentionally . . . hit[] [the female student] in the arm and back with drum sticks" and used "his hands to poke and scratch" her. *Id.*

While the juvenile case against A.D. was pending, Franklin County School Assistant Superintendent Carl Dekker informed Davis

---

[4] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

that he never received any complaint from students or parents regarding the battery allegations against A.D. Nevertheless, A.D. "was detained and made to appear in court on at least two separate occasions" to face the battery charge. Compl. ¶ 24. The charge was eventually dismissed, however, after multiple witnesses at the middle school informed the prosecutor that there was no evidence that A.D. ever committed the battery offense.

After A.D.'s charge was dismissed, his father, Plaintiff Davis, met with Matthew Bradley, the father of the female student who was named as the victim in the delinquency complaint. Bradley agreed to give a written statement of the incidents that led to the filing of the Delinquency Complaint. Compl. Ex. C, Bradley Statement, ECF No. 4-3. In his statement, Bradley acknowledged that he agreed to write up "an informal record" of A.D.'s alleged bullying of his daughter at Dove's request, but he made it clear to Dove that he "did not want to press charges." *Id.* at 1. Bradley stated that he was not made aware of the Delinquency Complaint until Prosecutor McFarlin called him regarding an upcoming trial against A.D. for the alleged battery of his daughter. Bradley stated that the allegations in the Delinquency Complaint were "more serious" than those he provided to Dove and averred that he never filed the Delinquency Complaint and had no intention of testifying against A.D. in the juvenile case. *Id.* Bradley concluded that

"the school's administrators appear to have used [him] to harass [A.D.] and his family." *Id.* at 2.

Davis then met with Bradley, Dove, and Franklin County Sheriff Andrews to discuss the Delinquency Complaint. During that meeting, Bradley maintained that he never intended to sign the Delinquency Complaint and indicated that Dove may have misled him into signing it. Dove, on the other hand, claimed that Bradley was responsible for the Delinquency Complaint. After the meeting, Sheriff Andrews expressed to Davis that he believed the Delinquency Complaint was fabricated by either Dove, Bradley, or both. Sheriff Andrews told Davis that he would refer the matter to the Georgia Bureau of Investigation. Despite numerous inquiries with the Sheriff's Office, Davis never received an update on any investigation.

Davis brought this action on behalf of his son, alleging that Cawthon and Dove targeted A.D. because of his race and "conspired to deprive [A.D.] of his constitutional rights" in order to "force" Davis to unenroll A.D. from Franklin County Middle School. Compl. ¶¶ 32, 38.

## DISCUSSION

Davis asserts claims under 42 U.S.C § 1983 against the Franklin County School District, the Franklin County Sheriff's Office, and Cawthon and Dove in their individual and official capacities for violation of A.D.'s rights under the Fourth and

Fourteenth Amendments.[5]  Davis also brings state law tort claims for false arrest and malicious prosecution against the Franklin County Sheriff's Office, Cawthon, and Dove.  Defendants Cawthon and the District moved to dismiss the claims against them.

At the outset, Cawthon and the District argue that Davis's complaint constitutes a shotgun pleading in violation of Federal Rule of Civil Procedure 10(b).  The Complaint does share some characteristics with a shotgun pleading: each count adopts the allegations of all preceding counts, and Davis does not separate his claims for relief under § 1983 but rather combines them all into a single count entitled "Violation of 42 U.S.C. 198[3]." Compl. at 8, ECF No. 4; *see Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015) (describing categories of shotgun pleadings).  Nevertheless, a shotgun pleading is one in which "it is *impossible* to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so." *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020) (emphasis added).  Although the Complaint is not a model of clarity, the Court was able to sufficiently ascertain which claims for relief Davis brings and which facts support those claims.  Thus, the Court refuses to

---

[5]  The Complaint states that Davis is seeking damages against "*individuals,* individuals acting under the color of law, and government organizations."  Compl. ¶ 1 (emphasis added).  The Court thus construes the Complaint to assert individual as well as official capacity claims.

dismiss Davis's complaint as a shotgun pleading.  The Court considers the remainder of Defendants' arguments below.

## I.    Section 1983 Claims Against Cawthon

Davis asserts claims against Cawthon in his individual capacity under § 1983 for violations of A.D.'s Fourth and Fourteenth Amendment rights.  Cawthon argues that he is entitled to qualified immunity against those claims.  Qualified immunity "protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (quoting *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007)).  Because Davis does not contest that Cawthon was acting within the scope of his discretionary authority when the challenged conduct occurred, he must demonstrate that "qualified immunity is not appropriate" in his case.  *Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1297 (11th Cir. 2023).  To carry this burden, Davis must allege facts that, when viewed in the light most favorable to him, show (1) Cawthon's conduct violated a constitutional right and (2) that the violated right was clearly established at the time the alleged violation occurred.  *Id.*  The Court addresses each of Davis's § 1983 claims in turn.

A.    Equal Protection Claim Against Cawthon

Davis alleges that Cawthon violated A.D.'s right to Equal Protection under the Fourteenth Amendment because Cawthon disciplined A.D. more harshly than white students, refused to discipline white students who bullied him, and caused a false Delinquency Complaint to be filed against him, all on account of his race.  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1, cl. 4.  "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  *Andre v. Clayton Cnty.*, 148 F.4th 1282, 1306 (11th Cir. 2025) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)).

The Court finds that Davis's complaint adequately alleges that Cawthon intentionally discriminated against A.D. because of his race in violation of A.D.'s clearly established right to equal protection of the laws.  Cawthon argues that he was not personally involved in any discriminatory discipline against A.D., but Davis alleges that Cawthon disciplined A.D. "at least 6 to 7 times . . . for incidents that either did not occur or where [A.D.] was the victim" of racial bullying.  Compl. ¶¶ 16-17.  Davis further alleges that Cawthon "direct[ed]" school personnel to "punish[]" A.D. instead of disciplining the white students who bullied him.

11

*Id.* ¶ 16.  And the Complaint states that Cawthon's actions "were motivated by racial discrimination against [A.D.], a newly admitted black American student in a predominately white school." *Id.* ¶ 35.  These allegations state a claim that Cawthon violated A.D.'s rights under the equal protection clause.

Cawthon contends that Davis has nevertheless failed to point to any clearly established case law that gives "fair notice to [Cawthon] under the unique facts of this case of any equal protection violation."  Def.'s Mot. Dismiss 18, ECF No. 18-1.  A plaintiff is not required to point to a factually analogous case, however, where "the conduct at issue 'lies so obviously at the very core of what the [Constitution] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw.'"  *Hunter v. City of Leeds*, 941 F.3d 1265, 1278 (11th Cir. 2019) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002)).  It is clearly established that "[t]he central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis*, 426 U.S. 229, 239 (1976).  Thus, Cawthon had fair notice that his alleged acts of racial discrimination violated A.D.'s constitutional rights.  Accordingly, Cawthon is not entitled to qualified immunity on Davis's equal protection claim.

B.    Due Process Claim Against Cawthon

Davis alleges that A.D. was "deprived of his rights to . . . due process under the Fourteenth Amendment." Compl. ¶ 37.  The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  "To bring a due process claim under [§] 1983, a plaintiff must establish '(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process.'"  *Resnick v. KrunchCash*, LLC, 34 F.4th 1028, 1035 (11th Cir. 2022) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

It has long been clearly established that public schoolchildren have a due process right to minimum procedures before a public school takes away their protected right to attend school.  *Goss v. Lopez*, 419 U.S. 565, 574 (1975).  Public schoolchildren are likewise entitled to minimum procedures before a public school sustains and records serious charges of misconduct against them that could "seriously damage" their standing with teachers and other students or "interfere with later opportunities for higher education and employment."  *Id.* at 575.  *Goss* involved suspensions "from school for periods of up to 10 days," though the Supreme Court noted that "the total exclusion from the educational process for more than a trivial period . . . is a serious event in

13

the life of the suspended child." *Id.* at 576.  Thus, the Supreme Court concluded that for students facing "a suspension of 10 days or less," due process requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581.

Here, Davis alleges that after another student started a fight with A.D. by punching him and pushing him, Cawthon blamed A.D. and ordered him suspended for five days—an entire school week.  Though Davis does not explicitly allege that Cawthon failed to give A.D. an opportunity to explain what happened and present his side of the story, he does allege that a rudimentary investigation would have revealed that A.D. was not the aggressor.  A reasonable inference from these allegations is that Cawthon did not give A.D. a legitimate opportunity to contest the charges.  The Court finds that these allegations are sufficient to state a due process claim against Cawthon, so Cawthon is not entitled to qualified immunity on that claim.

C.    Malicious Prosecution Claim Against Cawthon

Davis also alleges that Cawthon "falsely accused [A.D.] of battery and initiated criminal proceedings against him without probable cause and based on fabricated evidence."  Compl. ¶¶ 1, 33.  The Court construes these allegations to assert a § 1983 Fourth Amendment malicious prosecution claim.  To state a Fourth

14

Amendment malicious prosecution claim, a plaintiff must allege four elements: "(1) the plaintiff was seized under legal process; (2) the legal process justifying the plaintiff's seizure was constitutionally infirm; (3) the suit or proceeding terminated in the plaintiff's favor; and (4) the seizure would not otherwise be justified without legal process." *Gervin v. Florence*, 139 F.4th 1236, 1248 (11th Cir. 2025).

Cawthon argues that Davis cannot succeed on his malicious prosecution claim, because he did not allege that A.D. was "seized" by any Defendant.  A § 1983 claim for malicious prosecution "requires a seizure 'pursuant to legal process.'" *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)).  "[W]arrant-based seizures fall within this category", as do seizures "following an arraignment, indictment, or probable-cause hearing." *Id.*  Here, Davis does not allege that A.D. was arrested following his charge for simple battery.  Rather, Davis alleges that "Defendants caused [A.D.] to be detained without legal justification" and that "[A.D.] was required to appear in court at least twice, constituting a form of detention and a restraint on his liberty."  Compl. ¶¶ 41, 44.  These allegations do not establish that A.D. was seized pursuant to legal process following an arraignment, indictment, or probable cause hearing. *See Donley v. City of Morrow*, 601 F. App'x 805, 814 (11th Cir. 2015) (finding

15

that plaintiff was not seized when he was "forced to appear at his arraignment" to face criminal charges in municipal court). "Absent a seizure related to the prosecution," Davis does not allege "a cognizable federal claim for malicious prosecution," so Cawthon is entitled to qualified immunity on that claim. *Yancey v. Tillman*, No. 22-10867, 2022 WL 5071153, at *4 (11th Cir. Oct. 5, 2022) (reversing denial of motion to dismiss § 1983 malicious prosecution claim where plaintiff "did not allege she was seized following an arraignment, indictment, or probable-cause-hearing").

## II.  Section 1983 Claims Against the District

In addition to his individual capacity claims against Cawthon, Davis asserts claims against the District under § 1983 for violations of A.D.'s constitutional rights. Davis also alleges that Cawthon, in his official capacity, conspired with Dove to deprive A.D. of his constitutional rights. The Court begins its analysis with the conspiracy claim against Cawthon in his official capacity, which the Court construes as a claim against the District. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (noting that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent").

### A.    Conspiracy Claim Against the District

In Count I of Davis's complaint for claims under § 1983, Davis alleges that "Defendants Cawthorn and Dove, acting in their

16

official capacities as employees of the Franklin County School System and Franklin County Sheriff's Office, respectively, conspired to deprive [A.D.] of his constitutional rights." Compl. ¶ 32.[6] "A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010).

The District moved to dismiss any conspiracy claim against it as barred by the intracorporate conspiracy doctrine.[7] That doctrine holds that "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc). Thus, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspiracy among themselves." *Id.* The doctrine applies to § 1983 claims against public entities. *Grider*, 618 F.3d at 1261

---

[6] Davis's Complaint lists 42 U.S.C. § 1985 once in its first paragraph. That statue provides a cause of action regarding conspiracies to interfere with civil rights. Davis averred in his response to Defendant's motion to dismiss that he does not intend to bring a claim under that statute, so the Court will not construe Davis's complaint as bringing a § 1985 claim.

[7] The Court construes the District's arguments regarding conspiracies alleged under § 1985 to apply equally to conspiracies alleged under § 1983.

(applying the doctrine to § 1983 claims against employees of a city police department).

Davis alleged that both Cawthon and Dove are employees of the District. Compl. ¶¶ 7-8. The alleged subject of their conspiracy – the imposition of student discipline – relates to the performance of their duties as employees of the District. Accordingly, because both Cawthon and Dove were acting for the District when they allegedly made an illicit agreement to violate A.D.'s rights, the intracorporate conspiracy doctrine bars any conspiracy claim against the District arising out of that agreement.[8]  Thus, Davis's § 1983 conspiracy claim against the District is dismissed.

B.   Section 1983 Claims Against the District

The District argues that Davis's remaining § 1983 claims against it must be dismissed because Davis did not allege that any policy or custom of the District caused a violation of A.D.'s constitutional rights.[9]  In *Monell v. Dep't of Soc. Servs.*, the

---

[8] The Court recognizes that the Eleventh Circuit has acknowledged an exception to the intracorporate conspiracy doctrine as applied to claims under § 1985 where the alleged conspirators "'engage in a series of discriminatory acts' . . . over a significant period of time in the employment setting." *Grider*, 618 F.3d at 1262 (quoting *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 768-70 & n.9 (11th Cir. 2000)). However, the Eleventh Circuit has never adopted that exception for claims under § 1985 or § 1983. *Id.* at 1263 & n.34.

[9] The District's motion to dismiss focuses on the "policy or custom" argument and does not clearly address the merits of A.D.'s § 1983 claims, except to suggest that the allegations are too vague or conclusory. As discussed above, though, taking the factual allegations as true and drawing all reasonable inferences in Davis's favor, the complaint adequately alleges that Cawthon violated A.D.'s constitutional rights.

18

Supreme Court held that a municipality may be liable under § 1983 when its "official policy" causes a constitutional violation. 436 U.S. 658, 690-691 (1978). "A plaintiff can establish municipal liability under *Monell* in three ways: (1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

Davis argues that the District may be held liable under *Monell* because Cawthon is a "final policymaker" regarding student discipline. Under certain circumstances, municipal liability may be imposed for a single decision of a final policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *see Davis v. City of Apopka*, 78 F.4th 1326, 1352 n.7 (11th Cir. 2023) (referencing the so-called "final policymaker" avenue of municipal liability). In assessing whether an individual decision maker's act or policy is "final," courts look to whether there is actual "opportunity" for "meaningful" review. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004). This inquiry depends on state and local law, as well as local custom and the particular facts of the case. *Id.*

19

According to Plaintiff, Cawthon was a final policymaker for the District because he had the authority to suspend students and take other disciplinary measures, and he used that authority to mete out unwarranted discipline to A.D.  The District argues that Cawthon cannot be a final policymaker because his disciplinary decisions were subject to meaningful review.  Specifically, the District points to Davis's allegation that Superintendent Burton-Brown reviewed evidence of a fight between A.D. and another student and afterward removed Cawthon from having contact with A.D.  Compl. ¶ 16.  Davis does not allege, however, that Burton-Brown took any action to affirm or reverse any of Cawthon's punishments.  On the contrary, Davis alleges that Cawthon issued Consequences against A.D. at least "6 to 7 times," "ordered that [A.D.] be suspended," and "direct[ed]" other school personnel to punish him; Davis does not allege that any of these decisions were subject to review.  Compl. ¶¶ 16-17; *see Holloman*, 370 F.3d at  1293 (finding, on summary judgment, that a school principal was a final policymaker with respect to student discipline).  At this stage, the Court finds that Davis adequately pled that Cawthon is a final policymaker for the District with respect to student discipline at the middle school.  Thus, Davis's remaining § 1983 claims against the District may proceed under Monell's "final policymaker" avenue of liability, and the District's motion to dismiss those claims is denied.

20

C.    Punitive Damages

The District contends that Davis's claim against it for punitive damages should be dismissed, because local governments are immune from punitive damages under § 1983.  The Court agrees. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that municipalities are immune from punitive damages under § 1983).  To the extent that Davis seeks punitive damages under § 1983 against the District, that claim is dismissed.

## III. State Law Claims

Davis also brings claims against Cawthon under Georgia law for false arrest and malicious prosecution.  The Court addresses each of those claims in turn.

A.    Malicious Prosecution Claim Against Cawthon

Davis brings a malicious prosecution claim against Cawthon under Georgia law, alleging that he "acted with malice and without probable cause in initiating" the juvenile delinquency proceedings against A.D. Compl. ¶ 50.  "A person may be held liable for malicious prosecution when he provides information to an investigating officer that he knows to be false, and in doing so unduly influences the authorities to take the complained of actions." *Turnage v. Kasper*, 704 S.E.2d 842, 851 (Ga. Ct. App. 2010).  To state a malicious prosecution claim, Davis must allege "(1)  a criminal prosecution; (2)  instigated without probable cause; (3)  with malice; (4)  pursuant to a valid warrant,

21

accusation, or summons; (5) that terminated in the plaintiff's favor; and (6) caused the plaintiff damage." *McNeely v. Home Depot, Inc.*, 621 S.E.2d 473, 474-75 (Ga. Ct. App. 2005). "The requisite malice may be inferred from a total lack of probable cause. Thus, the gravamen of the complaint is the absence of probable cause on the part of the person instituting the prosecution." *McKissick v. S.O.A., Inc.*, 684 S.E.2d 24, 27 (Ga. Ct. App. 2009) (quoting *Barnette v. Coastal Hematology & Oncology, P.C.*, 670 S.E.2d 217, 220 (Ga. Ct. App. 2008)).

Cawthon argues that he cannot be liable for instigating a malicious prosecution against A.D., because his name does not appear on the Delinquency Complaint and he merely encouraged a student's parents to file charges against A.D. But Cawthon ignores Davis's allegations that Cawthon and Dove, the investigating officer, falsely accused A.D. of "hitting and poking" a student with drumsticks; that Cawthon and Dove both urged the student's parents to file criminal charges against A.D.; and that Cawthon and Dove ultimately "caused a false Delinquency Complaint to be filed" against A.D., based in part on the fabricated drumstick incident. Compl. ¶¶ 17-19, 21, 25. Thus, even though Cawthon's name does not appear on the delinquency complaint, it can be inferred from the alleged circumstances that Cawthon played a role in instigating the criminal prosecution against A.D. for the false battery charge.

Cawthon next argues that any battery charge against A.D. was supported by probable cause, because the drumstick incident was not fabricated.  Cawthon attempts to rely on an email Cawthon sent to one of A.D.'s teachers, in which Cawthon tells the teacher that "[A.D.] hit [another student] several times with his band instrument."  Def.'s Mot. to Dismiss Ex. A, D. Cawthon Email to Z. Almond (Sep. 16, 2024, 11:29 AM), ECF No. 18-3.  At the motion to dismiss stage, however, the Court must accept Davis's allegations as true and cannot rely on matters outside the pleadings.  *See Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv.*, 493 F. App'x 994, 995 (11th Cir. 2012) (per curiam) ("In adjudicating a motion to dismiss, the district court may not resolve factual disputes."). Accordingly, the Court accepts as true Davis's allegation that the alleged battery did not occur, so Cawthon's motion to dismiss the malicious prosecution claim on probable cause grounds is denied.  Finding that Davis adequately pled all the remaining elements of a malicious prosecution claim under Georgia law, the Court denies Cawthon's motion to dismiss that claim.[10]

### B.   False Arrest Claim Against Cawthon

Davis also brings a claim against Cawthon for false arrest. In Georgia, false arrest is "[a]n arrest under process of law,

---

[10]  Cawthon didn't seek dismissal of Davis's state law malicious prosecution claim on official immunity grounds, so the Court doesn't address that issue.

without probable cause, when made maliciously." O.C.G.A. § 51-7-1. As noted above, however, Davis does not allege that A.D. was arrested on his simple battery charge. Thus, the complaint fails to state a claim for false arrest, and that claim is dismissed.[11]

CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the motions to dismiss filed by Cawthon and the District (ECF Nos. 17 & 18). The following claims are dismissed: (1) Davis's § 1983 malicious prosecution claim against Cawthon, (2) Davis's conspiracy claim against the District, (3) Davis's punitive damages claim against the District, and (4) Davis's state law false arrest claim against Cawthon. The Court denies Defendants' motions to dismiss for (1) Davis's § 1983 equal protection claims against Cawthon and the District, (2) Davis's § 1983 due process claims against Cawthon and the District, and (3) Davis's state law malicious prosecution claim against Cawthon. Those claims, along with Davis's claims against Dove and the Franklin County Sheriff's Office, remain pending.

---

[11] Even if Davis had alleged that A.D. was arrested, his false arrest claim would still fail, because "an action for false arrest will not lie" if the unlawful action against the plaintiff "is carried on to a prosecution." *Schultz v. Lowe*, 874 S.E.2d 842, 845 (Ga. Ct. App. 2022). In that instance, a plaintiff's "exclusive remedy" would be a claim for malicious prosecution. *Id.* Here, Davis alleges that A.D. was prosecuted on his simple battery charge before that charge was ultimately dismissed, so Davis cannot state a claim for false arrest under Georgia law.

24

The stay of discovery (ECF No. 20) is lifted, and a Rules 16/26 Order shall be issued requiring the parties to submit a jointly proposed scheduling order for these proceedings.

IT IS SO ORDERED, this 10th day of February, 2026.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

25